## THE JOHN H. DILLON.

## THE JAMES A. GARFIELD.

## L'HOMMEDIEU v. THE JOHN H. DILLON and another.

## STARACE v. SAME.

*(District Court, S. D. New York. February 28, 1887.)*

**COLLISION—TUGS AND TOWS—EAST RIVER—BEND IN STREAM—CONTRARY SIGNALS—WRONGFUL PERSISTENCE IN COURSE—STATE STATUTES.**

Two tugs, with tows along-side, were navigating in the East river, and approaching the bend at Corlear's Hook; the D. going up with the flood-tide, the G. coming down. The state law required them to navigate in mid river. Both were considerably on the New York side, the G. a little nearer than the D. They exchanged contrary signals twice, and each steered to the westward, and persisted in doing so until a collision happened between their tows. *Held*, both liable; the D., *first*, for improperly assuming that the G., because her green light was seen across the bend on the D.'s port bow, was intending to cross to starboard; *second*, for not stopping and backing sooner; the G. for not stopping in time; and both for persistent steering to the westward.

In Admiralty.

*Geo. A. Black*, for libelants.

*Jas. W. Osborne*, for the John H. Dillon.

*Edward H. Hobbs*, for the James A. Garfield.

BROWN, J. Just after dusk on the seventeenth of November, 1885, as the steam-tug John H. Dillon, with three boats in tow along-side, two upon her starboard side, and one upon her port side, was going up the East river with the flood-tide, the outer boat on her starboard side came in collision off Corlear's Hook with the San Pedro, which was coming down the stream on the port side of the tug Garfield. The collision was near the marble yard at the point of the Hook. Each tug claimed that, when they were a quarter of a mile apart, she herself was within about 300 feet of the New York shore, and that the other was about in mid river. The Garfield, when above the Hook, saw the Dillon's red light below the Hook, gave one whistle, and ported; while the Dillon, about the same time seeing the Garfield's green light above the Hook, gave two whistles, and starboarded. The Garfield again blew one whistle, and again got an answer of two; and both continued sheering towards the New York shore. The Dillon's witnesses testified that they heard no responses to their two signals.

The testimony of the disinterested witness, Deakin, who passed the two vessels about the very time they came in collision, and went between them and the New York shore, shows that the nearness of the shore at that time was much exaggerated by the Garfield's witnesses, and that the collision was from 200 to 300 feet at least off the marble yard.

Deakin further testifies that as he came down past the Grand-street ferry, somewhat astern of the Garfield, the Dillon was somewhat further out in the river, perhaps 100 or 200 feet. I am inclined to give considerable weight to this testimony, though fully aware of the liability to overestimate the distance through the effect of perspective from Deakin's position. It is not necessary to pursue the details of the conflicting testimony in this case. I am satisfied of the following main facts:

(1) That both tugs, with their tows, were proceeding from 300 to 500 feet off the New York shore; the Dillon probably a little further out than the Garfield.

(2) That both were violating, without excuse, the statute rule that required them to go in mid river, "as near as may be."

(3) That the channel course changes from three to four points in going round Corlear's Hook; that the Dillon, below the Hook, saw the green light of the Garfield above the bend, and not the red light, because the Garfield was not yet headed down so as to show her red light; and that the Dillon, knowing the situation, had no right to assume that the Garfield was intending to cross the Dillon's bows from seeing her green light above the bend, (*The Chas. R. Stone*, 18 Fed. Rep. 190; *The W. H. Beaman*, Id. 334; *The Ranger*, L. R. 4 P. C. 519;) and that she was mistaken without excuse, if she did mistake the Garfield's position, and assume her to be further out in the river than herself; and that she had no right, against the rule which required her to keep to the right, to starboard, and go to the left, without a previous understanding to that effect by signals.

(4) That, hearing no response to her two whistles, the Dillon was bound to stop and back earlier than she did; and that had she done so, instead of sheering to the left towards the New York shore without an assenting signal, the collision would have been avoided.

(5.) The pilot of the Garfield was certainly mistaken in his testimony Running, as he was, parallel with the New York shore, whether 200 or 400 feet distant from it, the Dillon's red lights could not have been seen as he testifies, "well off his port bow, about 4 points, half a mile distant;" nor could the Dillon at that time, as he says, have borne from him about S. E. Either of these conditions would have put the Dillon in a place impossible under such circumstances. The Dillon must have been at that time on the Garfield's starboard bow, and in a position to see the Garfield's green light. Had the Dillon been on the Garfield's port bow before the latter turned the Hook, the Dillon, with her heavy tow, and with the tide setting towards the Brooklyn shore, could not have reached the place of collision. The Garfield's first signal of one whistle was doubtless a proper one; but, when it was answered by two whistles from the Dillon, there was evident danger of collision, which required the Garfield, under rule 21, to stop and back at once. Instead of doing so, the Garfield slowed only, and kept on, under a hard a-port wheel, towards the New York shore, towards which the Dillon was also swinging; and it was not until the second exchange of contrary whistles, when the boats were evidently quite near each other, and some time after the first

exchange of whistles, that the Garfield reversed. Both were to blame for their persistence in contrary maneuvering, and for the long-continued sheer of both from about the same moment till they came into collision.

The libelant is entitled to a decree against both, with costs.